People v Jones (2025 NY Slip Op 01524)

People v Jones

2025 NY Slip Op 01524

Decided on March 14, 2025

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on March 14, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: LINDLEY, J.P., BANNISTER, OGDEN, NOWAK, AND DELCONTE, JJ.

742 KA 23-00484

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
JOSEPH C. JONES, DEFENDANT-APPELLANT. 

JULIE CIANCA, PUBLIC DEFENDER, ROCHESTER (TONYA PLANK OF COUNSEL), FOR DEFENDANT-APPELLANT.
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (AMY N. WALENDZIAK OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Monroe County (Thomas E. Moran, J.), rendered March 25, 2019. The judgment convicted defendant upon his plea of guilty of attempted criminal possession of a weapon in the second degree. 
It is hereby ORDERED that the judgment so appealed from is modified on the law by vacating the sentence and, as modified, the judgment is affirmed and the matter is remitted to Supreme Court, Monroe County, for resentencing in accordance with the following memorandum: Defendant appeals from a judgment convicting him upon a plea of guilty of attempted criminal possession of a weapon in the second degree (Penal Law §§ 110.00, 265.03 [3]). Preliminarily, as the People correctly concede, defendant's waiver of the right to appeal is invalid because Supreme Court's colloquy and the written waiver "used overbroad language that mischaracterized the waiver as an absolute bar to the taking of an appeal" (People v Terry, 217 AD3d 1582, 1582 [4th Dept 2023], lv denied 40 NY3d 1041 [2023] [internal quotation marks omitted]; see People v Thomas, 34 NY3d 545, 565-566 [2019], cert denied — US —, 140 S Ct 2634 [2020]).
Contrary to defendant's contention, however, the court did not err in refusing to suppress the physical evidence recovered incident to his arrest. Two investigators from the New York State Department of Corrections and Community Supervision testified at the suppression hearing as members of an apprehension team assigned to locate and arrest a parole absconder for whom a valid arrest warrant had been issued. The evidence at the suppression hearing established that the apprehension team was advised by the absconder's girlfriend that he might be near the intersection of Flanders Street and Post Avenue in the City of Rochester. Upon arriving approximately 45 minutes later in two separate vehicles, the apprehension team immediately observed an individual walking from the 100 block of Flanders Street toward Post Avenue who closely matched the height and weight provided in the description of the absconder. That individual was wearing a ski mask that covered his face. When two members of the apprehension team pulled their vehicle alongside the masked individual, the man immediately ran away and fled into the backyards of homes on Post Avenue. One of the investigators in the trailing vehicle then stopped and exited his vehicle, and began pursuing the fleeing individual on foot, along with the other investigator who was in that vehicle. During the pursuit, one of the investigators observed what appeared to be a black handgun in the man's right hand that he tossed while attempting to climb over a fence. That investigator then arrested the masked individual, who was subsequently identified as defendant and not the absconder. During a search of defendant following the arrest, the investigator recovered a medicine bottle with six vials containing a white rock substance, and a search of the surrounding area led to the recovery of a black handgun on the other side of the fence and a second, silver handgun a short distance away along the path on which defendant had fled.
While defendant is correct that under De Bour the police may not generally initiate a [*2]pursuit of an individual without "a reasonable suspicion that a crime has been, is being, or is about to be committed" (People v Martinez, 80 NY2d 444, 447 [1992]; see People v Watkins, 221 AD3d 1430, 1431-1432 [4th Dept 2023], affd 42 NY3d 1074 [2024]; People v De Bour, 40 NY2d 210, 223 [1976]), the pursuit of defendant here was based upon the arresting officer's mistaken belief that defendant was someone else for whom a valid arrest warrant had been issued. It is well settled that "[t]he arrest of a person who is mistakenly thought to be someone else is valid if the arresting officer (a) has probable cause to arrest the person sought, and (b) reasonably believed the person arrested was the person sought" (People v Dortch, 186 AD3d 1114, 1115 [4th Dept 2020] [internal quotation marks omitted]; see People v Tejada, 270 AD2d 655, 657 [3d Dept 2000], lv denied 95 NY2d 805 [2000]).
With respect to the first element, there is no dispute that the apprehension team had probable cause to arrest the parole absconder inasmuch as an arrest warrant had been issued. As for the second element, "[t]he reasonableness of the arresting officers' conduct must be determined by considering the totality of the circumstances surrounding the arrest" (Dortch, 186 AD3d at 1115 [internal quotation marks omitted]), and "great deference should be given to the determination of the suppression court, which had the opportunity to observe the demeanor of the witnesses and to assess their credibility, and its factual findings should not be disturbed unless clearly erroneous" (People v Layou, 134 AD3d 1510, 1511 [4th Dept 2015], lv denied 27 NY3d 1070 [2016], reconsideration denied 28 NY3d 932 [2016]). Even though "[f]light alone . . . is insufficient to justify [a] pursuit" (People v Holmes, 81 NY2d 1056, 1058 [1993]), we conclude that under the totality of the circumstances present here the arresting officer's testimony establishes that he reasonably believed that defendant was the absconder when he initiated his pursuit. Defendant closely matched the height and weight provided in the parole absconder's description, covered his face with a ski mask, was in the location provided by the absconder's girlfriend, and immediately fled upon being approached by one of the apprehension team's unmarked vehicles. Inasmuch as the initial pursuit and subsequent arrest of defendant—which occurred after he was observed holding and then discarding a handgun—were lawful, the court did not err in refusing to suppress the physical evidence recovered during the post-arrest search of defendant and the surrounding area (see People v Daniels, 68 AD3d 1711, 1712 [4th Dept 2009], lv denied 14 NY3d 887 [2010]; People v Hampton, 50 AD3d 1605, 1606 [4th Dept 2008], lv denied 10 NY3d 959 [2008]).
Finally, we agree with defendant that, as the People correctly concede, the court erred in sentencing him as a predicate felon inasmuch as " 'the People failed to satisfy their burden of establishing that defendant was convicted of an offense in a foreign jurisdiction that is equivalent to a felony in New York' " (People v Gozdziak, 211 AD3d 1603, 1605 [4th Dept 2022], quoting People v Yancy, 86 NY2d 239, 247 [1995]). Because we cannot permit an illegal sentence to stand (see People v Stubbs, 96 AD3d 1448, 1450 [4th Dept 2012], lv denied 19 NY3d 1001 [2012]), we modify the judgment by vacating the sentence and remit the matter to Supreme Court for resentencing in accordance with the law (see Gozdziak, 211 AD3d at 1608; see also People v Milon, 114 AD3d 1130, 1131 [4th Dept 2014]).
All concur except Ogden and Nowak, JJ., who dissent and vote to reverse in accordance with the following memorandum: We agree with the majority that defendant did not validly waive his right to appeal. However, we respectfully disagree with the majority's conclusion that the parole officers had a reasonable belief that defendant was the person for whom they had an arrest warrant, and thus, we would suppress the tangible evidence recovered and dismiss the indictment. We conclude that an officer's reasonable belief must be founded upon specific and articulable facts testified to at the suppression hearing. Where, as here, it is not, any evidence obtained must be suppressed. Thus, we respectfully dissent.
On a cold, late December morning, New York State Department of Corrections and Community Supervision parole officers were attempting to locate a parole absconder for whom they had an arrest warrant. To accomplish that task, the parole officers were provided with the parolee's last known address and basic background information, including the height and weight of the parolee—six feet, one inch and 180 pounds—together with his photograph. After visiting with the parolee's girlfriend, the parole officers learned that the parolee may be located not at a specific address, but generally near the 100 block of Flanders Street. Despite being only a short distance away, the parole officers arrived on Flanders Street nearly an hour later. When they arrived, defendant—who was walking from the 100 block of Flanders Street toward Post Avenue [*3]wearing a ski mask—was approached by one group of parole officers (the approaching officers). Defendant fled, and there is no evidence that the approaching officers did anything to pursue defendant.
The second set of parole officers (the pursuing officers)—in a separate unmarked vehicle some 20 to 30 yards away—gave chase. They ultimately caught up to defendant and arrested him. Thereafter, the parole officers recovered two guns as well as narcotics. The record is devoid of any evidence as to the number of other people in the general vicinity where defendant was approached.
On this record, there is no dispute that the existence of a valid arrest warrant provided probable cause to arrest the parole absconder (see People v Dortch, 186 AD3d 1114, 1115 [4th Dept 2020]). In our view, however, it does not appear that the pursuing officers had even a subjectively reasonable belief that defendant was the parolee for whom they had an arrest warrant. Indeed, the People, who are "put to the burden of going forward to show the legality of the police conduct in the first instance" (People v Berrios, 28 NY2d 361, 367 [1971] [internal quotation marks & emphasis omitted]; see People v Walker, 221 AD3d 1568, 1568 [4th Dept 2023]), failed to adduce anything other than that defendant matched the generic height and weight of the average male in the general population. Notably, the People failed to call the approaching officers, and thus adduced no testimony with respect to their actions, observations, or whether they believed—reasonably or not—that defendant was the parole absconder, particularly in the absence of any evidence that they chased defendant when he fled.
The officers who did testify at the suppression hearing—the pursuing officers—testified simply that defendant roughly matched the height and weight of the parolee and that he fled. As set forth above, the pursuing officers did not testify that the approaching officers gave chase when defendant fled. Coupled with the pursuing officer's testimony that at the point when defendant fled, he was "free to leave," the record at the suppression hearing undercuts any possible claim that the pursuing officers were not simply chasing a man who fled, but that they actually believed defendant to be the parolee for whom they had an arrest warrant.
Even if the pursuing officers did believe that defendant was the parolee, we conclude that their belief was not objectively reasonable. In our view, for an officer's belief to be reasonable, it must be founded upon specific and articulable facts testified to at the suppression hearing. In Dortch, upon which the majority relies, the defendant was mistaken for his brother (186 AD3d at 1114-1115). However, in that case we did not reach the issue of whether the police reasonably believed the defendant was his brother, inasmuch as the majority concluded that the People failed to establish the validity of the underlying arrest warrant (see id. at 1115-1116).
In People v Tejada (270 AD2d 655 [3d Dept 2000], lv denied 95 NY2d 805 [2000]), another case upon which the majority relies, there were a number of specific and articulable facts, not present here, that supported the conclusion that the police had an objectively reasonable belief that the defendant was the subject of an outstanding arrest warrant—the defendant could not provide any written form of identification during a traffic stop and a warrant check revealed an outstanding arrest warrant for an individual who shared the same first and last names as defendant, who was of the same race as defendant, and who had a birth date only seven days apart from the date of birth provided by the defendant (id. at 656-657).
Here, however, the People failed to offer any specific and articulable facts that would support the conclusion that the pursuing officers reasonably believed defendant to be the parolee. Notably, the pursuing officers conceded at the hearing that it was not unusual for defendant to be wearing a ski mask on a cold December morning. Given the presence of the ski mask, they could not discern defendant's race. Moreover, contrary to the majority's conclusion, defendant's height and weight did not "closely match[ ]" that of the parole absconder. The pursuing officers had never met the parole absconder or defendant before the encounter, and were provided only with a one-page "arrest and booking data" document consisting of a single headshot, together with a written physical description of the parolee.
The physical description on that one-page document listed the parolee's height and weight as six feet, one inch and 180 pounds, and that document was marked as an exhibit and received in evidence at the hearing. Despite this, one of the pursuing parole officers appears to [*4]have affirmatively misrepresented what the document said, changing the parolee's height and weight from six feet, one inch and 180 pounds to 5 feet 11 inches and 185 pounds, respectively. In doing so, the parole officer made it appear that defendant—whom he testified was 5 feet, 11 inches, and 185 to 200 pounds—more closely matched the physical description of the parolee, instead of admitting that defendant was shorter and somewhat heavier.
In our view, the People's contention that the parole officers reasonably believed defendant was the parolee—based upon nothing more than the assertion that defendant purportedly "matched" the generic height and weight of the parolee—does not withstand scrutiny, particularly where the pursuing officers could not see defendant's face or even discern defendant's race given that they were 20 to 30 yards away from defendant who was, reasonably, wearing a ski mask on a cold December day. While the actual difference in height and weight between the two men is not dramatic, their respective heights and weights are not at all distinctive relative to the general public.
To that end, the majority's conclusion is tantamount to holding that the parole investigators had a reasonable belief sufficient to stop and arrest any average-sized man, of any race, in the general area where the parolee may have been. Inasmuch as the People failed to adduce any specific and articulable facts that would support the conclusion that the parole officers reasonably believed defendant to be the parolee, we would reverse the judgment, vacate defendant's guilty plea, grant that part of his omnibus motion seeking to suppress tangible evidence, and dismiss the indictment.
In light of our determination, it is not necessary to address defendant's remaining contention.
Entered: March 14, 2025
Ann Dillon Flynn
Clerk of the Court